UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| GREGORY DAVID DRAKE | ) | |
| | ) | |
| v. | ) | No. 1:04-cv-149 / 1:02-cr-216 |
| | ) | *Edgar* |
| UNITED STATES OF AMERICA | ) | |

**MEMORANDUM**

Gregory David Drake ("Drake") moves for post-conviction relief pursuant to 28 U.S.C. § 2255. [Doc. No. 1].[1] The Court ordered the government to respond. [Doc. No. 3]. The government moved for an extension of time to file its response [Doc. No. 4] and eventually responded to Drake's § 2255 motion [Doc. No. 5]. Drake replied to the government's response. [Doc. No. 6]. In his reply, Drake effectively moved to amend his § 2255 motion to add an additional claim for relief. The Court will **GRANT** the government's motion for en extension of time to respond [Doc. No. 4] and Drake's motion to amend his § 2255 motion [Doc. No. 6]. In short, the Court will consider all claims and arguments currently before it. After considering these claims, the Court will **DENY** Drake relief pursuant to 28 U.S.C. § 2255. The record conclusively shows that Drake is not entitled to any relief. There is no need for an evidentiary hearing.

**I.    Standard of Review Under 28 U.S.C. § 2255**

A federal prisoner may file a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence upon the ground that the sentence was imposed in violation of the United States

---

[1] The Court will cite to the civil record, Case No. 1:04-cr-149, as follows: [Doc. No. _]. The Court will cite to the underlying criminal record, Case No. 1:02-cr-216, as follows: [Case No. 1:02-cr-216, Doc. No. _].

-1-

Constitution. To obtain relief under § 2255, the movant bears the burden of establishing an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir.1999). "To prevail under 28 U.S.C. § 2255, a defendant must show a fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir.1994) (internal quotation omitted).

**II.    Facts**

On November 28, 2002, an employee at a Wal-Mart in Hixson, Tennessee, contacted the Chattanooga Police Department, reporting that four individuals, including Drake, were suspected of purchasing items which could be used to manufacture methamphetamine. Additional investigation led law enforcement officers to discover a methamphetamine lab and several firearms at the home of one of the individuals. Officers also discovered additional firearms and equipment used to manufacture methamphetamine in a storage unit.

On December 10, 2002, a grand jury returned a five-count indictment against Drake and two co-defendants. Drake was specifically named in three counts and charged with conspiring to manufacture and distribute 500 grams or more of a mixture or substance containing methamphetamine, knowingly and intentionally attempting to manufacture methamphetamine, and knowingly and intentionally possessing equipment, chemicals, products, and materials used to manufacture methamphetamine.

On January 30, 2003, the government filed a notice of intent to use a prior drug conviction to enhance Drake's sentence, pursuant to 21 U.S.C. § 851. That same day Drake entered a plea

agreement with the government. Drake pled guilty to the conspiracy charge. In return, the government dismissed the remaining charges against Drake.

The probation office prepared a presentence report for Drake. No methamphetamine was discovered during the investigation, so the report held Drake responsible for pseudoephedrine, a precursor to manufacturing methamphetamine. Using empty pseudoephedrine packages found near the methamphetamine lab, the report attributed 270 grams of pseudoephedrine to Drake. Upon converting this quantity to the appropriate amount of marijuana, Drake's base offense level was 32. Drake was given a two-level enhancement for firearm possession, a two-level enhancement for his role in the offense, and a three-level reduction for his acceptance of responsibility. Drake's total offense level of 33 was combined with his criminal history category of III to render a sentencing guidelines range of 168 to 210 months.

However, the statutory sentencing provisions dictated Drake's sentencing range. Given the quantity of methamphetamine to which Drake pled guilty and Drake's prior drug conviction, 21 U.S.C. § 841(b)(1)(A) mandated a statutory minimum sentence of 20 years. Consequently, Drake's effective sentencing range was 240 months.

At the sentencing hearing the government moved for a downward departure pursuant to United States Sentencing Guidelines § 5K1.1. The Court granted the motion, departed below the statutory mandatory minimum of 240 months, and sentenced Drake to 185 months imprisonment. Drake appealed, but the Sixth Circuit affirmed. *United States v. Drake*, No. 03-5682, 2004 WL 1737959, at *1 (6th Cir. July 28, 2004). While his direct appeal was pending before the Sixth Circuit, Drake filed this § 2255 motion.

### III. <u>Analysis</u>

In his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, Drake contends his counsel was ineffective in various ways. In his reply to the government's response, Drake effectively moved to amend his § 2255 motion to add a claim that his sentence violates the Supreme Court's recent decision in *United States v. Booker*, ---U.S.---, 125 S.Ct. 738 (2005). The Court will **GRANT** Drake's motion to amend his § 2255 motion and will consider the *Booker* claim. After thoroughly reviewing Drake's claims, the Court will **DENY** Drake relief on each of these grounds.

#### A. <u>Ineffective Assistance of Counsel Claims</u>

Drake contends his counsel was ineffective in multiple ways. Ineffective assistance of counsel occurs when an attorney's deficient performance prejudices the defendant. *Lockhart v. Fretwell*, 506 U.S. 356, 369 (1993); *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Sowell v. Bradshaw*, 372 F.3d 821, 836 (6th Cir. 2004); *Smith v. Mitchell*, 348 F.3d 177, 199 (6th Cir. 2003); *Skaggs v. Parker*, 235 F.3d 261, 266-67 (6th Cir. 2000). In *Strickland* the Supreme Court set forth a two-part test for evaluating ineffective assistance of counsel claims. 466 U.S. at 687; *Sowell*, 372 F.3d at 836; *Smith*, 348 F.3d at 199. First, a defendant must demonstrate that counsel's performance was deficient, falling below an objective standard of reasonableness. *Id.*; *Sowell*, 372 F.3d at 836-37. Second, a defendant must establish that this deficient performance prejudiced the defense. *Id.*; *Sowell*, 372 F.3d at 836-37.

In determining whether an attorney's conduct was deficient, a defendant must demonstrate that his attorney's errors were so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *Id.*; *Sowell*, 372 F.3d at 836.

-4-

The Court's scrutiny of the reasonableness of counsel's performance is highly deferential. *Id.* at 689; *Sowell*, 372 F.3d at 837. Defense counsel is strongly presumed to have rendered adequate legal assistance and to have made all decisions in the exercise of reasonably professional judgment and sound strategy. *Nix v. Whiteside*, 475 U.S. 157, 165 (1986); *Strickland*, 466 U.S. at 689-90; *Sowell*, 372 F.3d at 837.

The second prong of the *Strickland* test requires a defendant to show that his attorney's deficient performance prejudiced his case. *Strickland*, 466 U.S. at 687; *Sowell*, 372 F.3d at 836; *Smith*, 348 F.3d at 199. To establish prejudice, the defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687; *accord Sowell*, 372 F.3d at 836; *Smith*, 348 F.3d at 199. A defendant must show a reasonable probability that, but for counsel's deficient performance, the result of the criminal proceeding would have been different. *Id.* at 694; *Smith*, 348 F.3d at 199. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial or judicial proceeding. *Id.* at 693-94.

In the instant case, Drake first contends his counsel was ineffective for failing to properly investigate his criminal history and argue at the sentencing hearing that Drake's prior conviction was invalid. Drake's counsel's failure to do so was neither deficient nor prejudicial. "In *Custis* [*v. United States*, 511 U.S. 485 (1994)], the Supreme Court held that unless there has been a previous ruling that a conviction has been ruled constitutionally invalid, or unless the conviction has been obtained when counsel has not been available or provided, in violation of *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), a collateral attack on the conviction is not allowed at sentencing." *United States v. Bonds*, 48 F.3d 184, 186 (6th Cir. 1995). Here, Drake does not allege that his prior conviction has been ruled constitutionally invalid, nor that counsel was not

-5-

Case 1:04-cv-00149  Document 7  Filed 05/23/05  Page 5 of 10  PageID #: 24

provided. Rather, Drake argues that his prior conviction was unconstitutional because the grand jury foreman was not properly sworn or appointed at the time of the indictment and the indictment failed to specify a date for the drug transactions. *Custis* forecloses such arguments. Consequently, Drake's counsel was not ineffective in this regard.

Next, Drake contends his counsel was ineffective for failing to object at the sentencing hearing to the calculation of the drug quantity. Here, Drake raises two distinct underlying contentions. First, Drake argues that all of the manufactured methamphetamine was for personal use, not distribution, and, therefore, could not be used to calculate the appropriate drug quantity pursuant to *United States v. Gill*, 348 F.3d 147 (6th Cir. 2003). Drake's guilty plea contradicts his current argument. Drake pled guilty to conspiring to manufacture and distribute 500 grams or more of a mixture and substance containing methamphetamine. [Case No. 1:02-cr-216, Doc. No. 62, Tr. of Rearraingment Hr'g at p. 8]. The factual basis for Drake's guilty plea provides further contradiction:

> THE COURT: All right. Will the government state the factual basis of its case here against Mr. Drake?
>
> MR. SULLIVAN: Yes, Judge. . . .
>
> Based upon the empty containers of the pseudoephedrine, DEA was able to estimate that they had over 270 grams of pseudoephedrine. The guidelines if this was a strict methamphetamine case would allow the Court to extrapolate that into about 135 grams of pure methamphetamine, not a mixture or substance but pure. But based upon the items, DEA estimated that several pounds of methamphetamine had been produced by this group.
>
> . . . Some of the individuals involved in the offense cooperated and would have testified that Mr. Drake's position in the overall conspiracy was basically he

|                  | was the cook, Judge. Mr. Shipley went and got a lot of products for him and assisted him in cooking and Ms. Bowman helped distribute and sell some of the methamphetamine that they manufactured. That, in essence is what our proof would be. |
|---|---|
| THE COURT: | All right. Mr. Drake, did you hear what Mr. Sullivan just said here about the facts in your case? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | And are those facts true? |
| THE DEFENDANT: | Yes, sir. |

[*Id.* at p. 12-15]. In short, Drake admitted and pled guilty to manufacturing methamphetamine for distribution. Consequently, his counsel was not ineffective for failing to argue at the sentencing hearing that the manufactured methamphetamine was solely for personal use and could not be used to calculate an appropriate drug quantity.

Second, Drake contends that in calculating the appropriate drug quantity in this case, the Court "should have only used the amount of pure drug contained in the alleged unusable solution in determining the alleged drug quantity under the statute requiring a mandatory minimum sentence of 10 years." [Doc. No. 2 at p. 8]. Though it is difficult from Drake's argument to discern exactly to what he objects, his drug quantity was appropriately calculated for both the statutory sentencing provision and the sentencing guidelines range. To the extent Drake objects to the drug quantity used to determine the appropriate statutory sentencing provision, Drake pled guilty to the requisite quantity. Drake's sentence was guided by 21 U.S.C. § 841(b)(1)(A), which requires 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. § 841(b)(1)(A)(viii). Drake pled guilty to this exact amount. [Case No. 1:02-cr-216, Doc. No. 62, Tr. of Rearraingment Hr'g]. Consequently, Drake's sentence was properly based on § 841(b)(1)(A).

To the extent Drake objects to the drug quantity used to determine his sentencing guidelines range, the quantity was properly calculated. The presentence report, and the Court, held Drake responsible for 270 grams of pseudoephedrine, a precursor to manufacturing methamphetamine. [Case No. 1:01-cr-14, Presentence Report at ¶¶ 18, 24; *Id.*, Doc. No. 59, Tr. of Judgment Hr'g]. Because no pseudoephedrine was seized, this amount was appropriately calculated from the empty pseudoephedrine packaging found near Drake's methamphetamine lab. [*Id.*, Presentence Report at ¶ 18]. The Sentencing Guidelines require, and the Sixth Circuit sanctions, "approximat[ing] the quantity of the controlled substance" "[w]here there is no drug seizure." U.S.S.G. § 2D1.1, comment. (n.12); *United States v. Brannon*, 7 F.3d 516, 520 (6th Cir. 1993). Albeit in unpublished opinions, the Sixth Circuit has held that such drug quantity calculations can be based on empty packages. *See United States v. Smartt*, No. 02-5595, 2003 WL 1194250, at *1 (6th Cir. Mar. 7, 2003); *United States v. Stewart*, No. 98-6753, 2001 WL 223898, at *10 (6th Cir. Feb. 27, 2001). The decisions of sister circuits are in accord. *See United States v. Basinger*, 60 F.3d 1400, 1409-10 (9th Cir. 1995); *United States v. Henderson*, 58 F.3d 1145, 1152 (7th Cir. 1995); *accord United States v. Bishop*, No. 04-50014, 2004 WL 2913893, at *1 (5th Cir. Dec. 16, 2004) (*vacated by United States v. Booker*, ---U.S.---, 125 S.Ct. 738 (2005)). Accordingly, Drake was appropriately held responsible for 270 grams of pseudoephedrine. Drake's counsel was not ineffective for failing to object to the calculation of the drug quantity.

Finally, Drake argues his counsel was ineffective for failing to appeal Drake's sentence. According to Drake, his counsel indicated that he would appeal Drake's sentence but a few months later notified Drake that there were no appealable issues. Contrary to Drake's contention, his counsel filed an appeal. *See United States v. Drake*, No. 03-5682, 2004 WL 1737959, at *1 (6th Cir.

July 28, 2004). Granted, on appeal Drake's counsel moved to withdraw and filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). *Id.* at *1. Despite being informed of his opportunity to respond, Drake failed to do so. *Id.* The Sixth Circuit granted Drake's counsel's motion to withdraw, reviewed Drake's guilty plea and sentence, and affirmed this Court's judgment of conviction. *Id.* at *1-*2. Drake's counsel was not ineffective for failing to file an appeal on Drake's behalf.

### B. *Booker* Claim

Following the government's response to his § 2255 motion, Drake filed a reply. [Doc. No. 6]. In his reply, Drake raised a new claim: that his sentence violates the Supreme Court's recent decision in *United States v. Booker*, ---U.S.---, 125 S.Ct. 738 (2005). Though Drake does not directly move the Court to add this additional claim to his § 2255 motion, the Court considers Drake's reply effectively to be a motion to amend his § 2255 motion. The Court will **GRANT** Drake's motion to amend and will consider his *Booker* claim.

However, *Booker* provides no relief to Drake. The Sixth Circuit has explicitly held that *Booker* does not apply retroactively in collateral proceedings. *Humphress v. United States*, 398 F.3d 855, 860-63 (6th Cir. 2005). This decision is in accord with every other circuit to consider the issue. *In re Olopade*, 403 F.3d 159, 162-64 (3d Cir. 2005); *Varela v. United States*, 400 F.3d 864, 868 (11th Cir. 2005); *Bey v. United States*, 399 F.3d 1266, 1269 (10th Cir. 2005); *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005); *Green v. United States*, 397 F.3d 101, 103 (2d Cir. 2005). When the Supreme Court decided *Booker*, Drake's case was on collateral review. Because *Booker* does not apply retroactively to cases on collateral review, Drake is not entitled to any relief under *Booker*.

A separate order will enter.

	*/s/ R. Allan Edgar*
R. ALLAN EDGAR
CHIEF UNITED STATES DISTRICT JUDGE